UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE W. HOOKER, <br> Plaintiff, <br> v. <br> I. GOMEZ, <br> Defendant. | Case No. 16-cv-07019-HSG <br><br> **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 37 |

Plaintiff, an inmate at California Men's Colony, filed this *pro se* action pursuant to 42 U.S.C. § 1983 alleging that Correctional Training Facility ("CTF") Officer I. Gomez was deliberately indifferent to his safety in violation of the Eighth Amendment.[1] Now pending before the Court is Defendant Gomez's motion for summary judgment. Plaintiff has filed an opposition, Dkt. No. 39, and Defendant Gomez has filed a reply, Dkt. No. 42. For the reasons set forth below, Defendant Gomez's summary judgment motion is GRANTED.

**FACTUAL BACKGROUND**

The following facts are undisputed unless otherwise noted.

During the relevant time period, Defendant Gomez was a CTF relief officer, assigned to Facility C. Dkt. No. 37-1 ("Gomez Decl.") ¶ 1. Defendant Gomez regularly harassed Plaintiff while he was housed at CTF.[2] Despite Plaintiff's mental health condition, Defendant Gomez would go by Plaintiff's cell and bang his keys against the door. Defendant Gomez would go by

---

[1] Plaintiff's allegation that Defendant Gomez harassed him was dismissed because it failed to state a constitutional claim. Dkt. No. 24 at 2 (citing *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended* 135 F.3d 1318 (9th Cir. 1998)).
[2] The record is silent as to when Plaintiff arrived at CTF. Plaintiff was transferred to High Desert Prison sometime in 2015. Dkt. No. 37-3 at 80; Hooker Depo. 79:20–79:21.

when Plaintiff was playing chess and slam his keys down. Plaintiff repeatedly asked Defendant Gomez to stop harassing him, without success. Dkt. No. 37-3 at 11–13; Hooker Depo. 10:21–12:17. Inmate Claudio would laugh whenever he saw Defendant Gomez annoy Plaintiff. Dkt. No. 37-3 at 36; Hooker Depo. 35:2–35:12. Defendant Gomez would also disrespect Plaintiff by calling him "Hook." Dkt. No. 37-3 at 31; Hooker Depo. 30:20–30:23. Whenever Inmate Claudio heard Defendant Gomez referring to Plaintiff as "Hook," inmate Claudio would say, "Hey, Hook," and Plaintiff would respond, "Don't call me that" or "My name is Hooker." Or "My name is Mo," "Mo" being Plaintiff's alias. ECF No 37-3 at 36–37; Hooker Depo. 35:20–36:23.

Inmate Claudio has a good relationship with the correctional officers, which caused inmate Claudio to behave like a junior correctional officer and treat other inmates, including Plaintiff, in the same manner that the correctional officers treated those inmates. Inmate Claudio did whatever Officer Gomez instructed him to do. ECF No. 37-3 at 32–35; Hooker Depo. at 31:10–31:17, 32:2–32:9, 33:7–34:15.

On April 29, 2014, Defendant Gomez was assigned as a CTF Facility C corridor officer. He was positioned in front of X-wing,[3] monitoring inmates as they moved through the corridor to get their medication or go to the dining hall. Gomez Decl. ¶ 2. To enter or exit X-wing, inmates must pass through a door that can only be opened or closed by an officer. Dkt. No. 37-3 at 16; Hooker Depo. 15:22–15:25. As the upper corridor officer, Defendant Gomez can operate the X-wing door. ECF No. 37-3 at 24; Hooker Depo. at 23:23-23:25.

**A.     Fight Between Plaintiff and Inmate Claudio**

**1.     Plaintiff's Version of Events**

Plaintiff describes the relevant events as follows. On April 29, 2014, Defendant Gomez came into X-wing and released inmates to go to medical pill call. Dkt. No. 37-3 at 12; Hooker Depo. 11:16–11:25. Defendant Gomez played games with the inmates by instructing them to line up by race, telling the black inmates that they had to wait to receive their medications after the

---

[3] The Court presumes that the reference in Defendant Gomez's declaration to Z-Wing (Gomez Decl. ¶ 2) is a typographical error. All other references in the record to the prison wing are to X-wing.

2

inmates of other races had received their medication. Plaintiff asked Defendant Gomez to stop playing these games, and Defendant Gomez told Plaintiff something to the effect of "Be quiet and wait your turn." Dkt. No. 37-3 at 12–13, 15–16; Hooker Depo. 11:17–11:25; 14:23–15:2. Because of Defendant Gomez's actions, Plaintiff was delayed about five minutes in receiving his anti-depressant. Dkt. No. 37-3 at 39; Hooker Depo. 38:1–38:5.

When Plaintiff returned from getting his medication, he asked Defendant Gomez to open the door. Defendant Gomez opened the door while snickering at Plaintiff. Inmate Claudio was behind Plaintiff, so Plaintiff informed Defendant Gomez that there was another inmate at the door. Inmate Claudio told Plaintiff, "You don't need to speak up for me. I speak for myself." Defendant Gomez opened the door for inmate Claudio, and they started talking. Dkt. No. 37-3 at 16; Hooker Depo. 15:3–15:15. Plaintiff did not hear the conversation between Defendant Gomez and inmate Claudio but believes that Defendant Gomez instructed inmate Claudio to go over to Plaintiff. Dkt. No. 37-3 at 21, 34; Hooker Depo. at 20:14–20:25, 33:14–34:24. Inmate Claudio approached Plaintiff and said, "I don't need you speaking up for me." Plaintiff responded, "I don't need no drama from you or your friend at the door." Inmate Claudio took offense and leaned forward in an aggressive manner. Plaintiff pushed inmate Claudio away, and inmate Claudio came at him with a closed-fist punch. Plaintiff does not recall what happened next because he was in a rage, but he probably threw inmate Claudio to the floor. Dkt. No. 37-3 at 21, 34; Hooker Depo. at 21:3–24:4. Plaintiff denies punching or kicking inmate Claudio in the head. Dkt. No. 37-3 at 49–50; Hooker Depo. at 48:23–49:11. Plaintiff also denies sitting at a table with inmate Claudio, stating that it would be unlikely for inmate Claudio and him to sit at the same table because they are of different ethnicities and at CTF inmates of different ethnicities do not sit at the same table. Dkt. No. 37-3 at 44–46; Hooker Depo. at 43:17–45:14.

### 2. Defendant Gomez's Version of Events

Defendant Gomez describes the relevant events as follows. Defendant Gomez spoke briefly to Plaintiff that day, instructing him to return to his housing unit because the diabetic inmates had not yet finished receiving their medication. Gomez Decl. ¶ 2. Diabetic inmates receive their medications before other inmates because they must eat shortly after receiving their

3

insulin injections. Gomez Decl. ¶ 2. To Defendant Gomez's knowledge, Plaintiff was neither diabetic nor receiving insulin at that time. Defendant Gomez does not recall having a conversation with inmate Claudio that day. Gomez Decl. ¶ 3. Prior to this incident, Defendant Gomez was unaware of any risk of harm to either Plaintiff or inmate Claudio.

Officer Solis witnessed the April 29, 2014 fight between Plaintiff and inmate Claudio, but Defendant Gomez did not. Gomez Decl. ¶ 4. That day, Officer Solis was responsible for opening the X-wing door to release inmates to receive their medication. At approximately 6:45 a.m., Officer Solis released diabetic inmates and inmates for Direct Observation Therapy medication. Approximately fifteen minutes later, the inmates returned, and Officer Solis opened the X-Wing door to allow the inmates to enter the wing. The inmates stayed on the first tier, sitting at the tables. After securing the X-wing door, Officer Solis walked towards the dayroom and observed Plaintiff sitting at a table facing inmate Claudio. Officer Solis observed Plaintiff swing his right hand in a closed fist, striking inmate Claudio on the left side of his head and knocking him to the ground. Officer Solis pressed his alarm, drew his baton, and ordered Plaintiff to stop and get down. Plaintiff did not comply with the order and instead stood up and repeatedly kicked inmate Claudio in the head with his right foot, and stating approximately twice, "Who's the punk now?" Plaintiff then took a prone position. Officer Solis observed inmate Claudio lying on the ground unconscious, breathing, and bleeding from his right ear. Medical arrived and assumed care of inmate Claudio while Plaintiff was placed in handcuffs. Gomez Decl. ¶ 2; Dkt. No. 37-3 at 132, 142.

### B. Events Subsequent to the Fight

The fight lasted approximately thirty seconds. Inmate Claudio hit the ground pretty hard. Dkt. No. 37-3 at 21, 34; Hooker Depo. at 21:3–24:4. Inmate Claudio was rendered unconscious. He suffered a bruise, swelling, reddening and a discolored area on his forehead; an abrasion and scratch over his left eye; abrasion and scratches near his ear and on his chin; and dried blood in his ear. Dkt No. 37-3 at 159. According to CTF's Chief Physician and Surgeon, Darrin Bright, Inmate Claudio sustained severe and permanent vision loss in his right eye. Dkt No. 37-3 at 158. Plaintiff refutes prison reports that inmate Claudio sustained vision loss as a result of the fight,

4

stating that, based on his observations, inmate Claudio has no trouble with his vision. Dkt. No. 37-3 at 63–65, 68; Hooker Depo. at 62:24–64:3, 67:11–68:12. The medical evaluation of Plaintiff immediately after the incident states that Plaintiff had no injuries. Dkt. No. 37-3 at 160. Plaintiff disputes the accuracy of the medical report, stating that he suffered scratches and bruises on his neck and probably his wrist. The injuries were sustained during the fight with inmate Claudio and unrelated to the correctional officers who responded to the fight. Correctional officers tackled Plaintiff to stop the fight, but no force or pepper spray was used on him Dkt No. 37-3 at 24–25, 59–60; Hooker Depo. at 24:23–25:8, 58:6–59:14.

Incident reports are prepared by correctional officers who witness the incident. Officer Solis authored the incident report regarding the fight. Dkt. No. 37-3 at 52–54; Hooker Depo. at 52:24–54:13. Plaintiff was issued a rules violation report ("RVR") for battery on an inmate causing serious injury/mayhem. On February 21, 2015, a hearing was held on the RVR. At the hearing, Plaintiff made the following statement and answered the senior hearing officer's questions as follows:

> **INMATE STATEMENT**: Inmate Hooker pled NOT GUILTY and stated, "Claudio came back from pill call." "He comes to the X-Wing front door." "I told Officer Solis that the guys are back from pill call and they're at the front door waiting for it to be open." "Claudio then yells through the door saying, Hey mother fucker don't use me as an excuse to have the door open." "I told Claudio, Don't come at me like that, what is your problem?" "Officer Solis then opened the front door, Claudio came through." "I said to Claudio, What's your problem, don't ever get at me like that." "Claudio then said, Fuck you Punk Bitch, you aren't going to do shit about it anyway!" "At that time all the blacks behind me started instigating for me to do something about what Claudio just said to me." "So I said to the blacks, Calm down I'm going to try to defuse the situation." "Claudio then walked towards all the paisas because he saw me walk towards him." "Claudio then stepped in front of me and I told him that he can't be doing that kind of stuff in front of the blacks like that." "Claudio got angry and lunged forward towards me, so I dropped him." Inmate Hooker had no further statement for this hearing.
>
> **The SHO elected to ask Inmate HOOKER the following questions:**
> Q1: Did you hit Claudio with your right fist?
> A1: Yes.
> Q2: Why did you hit him?
> A2: Because he tried to lunge at me.
> Q3: Why didn't you just walk away from the situation?
> A3: Because then I would have to answer to my people.
> **The SHO had no further questions for inmate Hooker.**

Dkt. No. 37-3 at 163. Plaintiff was found guilty of battery on an inmate causing serious

injury/mayhem, 15 Cal. Code Regs. § 3005(d)(1).[4] He was assessed 360 days forfeiture of credit. Dkt. No. 37-3 at 162–169; *see also* Dkt. No. 37-3 at 70–71; Hooker Depo. at 69:24–70:20. Plaintiff states that he agreed to take responsibility for the fight only because correctional officers promised to make the incident "go away" and that he would only need to sign a chrono. Dkt. No. 37-3 at 64–65; Hooker Depo. at 64:5–65:14. Plaintiff reports that, after April 29, 2014, there were no other incidents of harassment involving Officer Gomez. Dkt. No. 37-3 at 82–84; Hooker Depo. at 81:12–84:25.

**DISCUSSION**

Defendant Gomez argues that he is entitled to summary judgment because Plaintiff's claim is barred by *Heck v. Humphrey*, 512 U.S. 447 (1994); because he did not violate Plaintiff's Eighth Amendment rights to be free from deliberate indifference to his safety; and because he is entitled to qualified immunity. Dkt. No. 37. Plaintiff argues that Defendant Gomez incited the fight between himself and inmate Claudio, and that the evidence he has set forth is sufficient to defeat summary judgment. Dkt. No. 21 at 3; Dkt. No. 39.

**I.    Summary Judgment Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a) (2014). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

---

[4] Section 3005(d)(1) states: "Inmates shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force or violence upon another person." 15 Cal. Code Regs. § 3005.

6

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, 'designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)). The nonmoving party must show more than "the mere existence of a scintilla of evidence." *In re Oracle Corp Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56; *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). A verified complaint may be used as an opposing affidavit under Rule 56 if it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn. 10–11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Because Plaintiff's complaint is verified, it may be considered as evidence in opposition to the motion for summary judgment.

## II. *Heck* Claim

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court held that a plaintiff may not bring a Section 1983 action for damages based on "actions whose unlawfulness would render a conviction or sentence invalid" when his conviction or sentence has not yet been reversed, expunged, or otherwise invalidated. *Heck*, 512 U.S. at 486–87. The Supreme Court instructed district courts faced with prisoner Section 1983 suits for damages to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. *Heck* also bars a prisoner from raising a Section 1983 claim challenging the validity of a disciplinary conviction resulting in the loss of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 644–46 (1997) (holding that claims alleging procedural defects and bias by a hearing officer at disciplinary hearing were not cognizable under *Heck* because they implied invalidity of credit forfeiture imposed at hearing); *see also Muhammad v. Close*, 540 U.S. 749, 754–55 (2004) (*Heck* applies to disciplinary proceedings where the administrative action taken against prisoner affects duration of his confinement by bearing on good time credits).

Defendant Gomez argues that Plaintiff's claim is *Heck*-barred because Plaintiff's Eighth Amendment claim is based on the premise that Defendant Gomez is responsible for the assault on inmate Claudio, which would contradict the disciplinary officer's finding that Plaintiff was responsible for the assault. Dkt. No. 37 at 6. In support of this argument, Defendant Gomez cites to *Farley v. Virga*, No. 2:11-CV-1830-KJM KJN, 2013 WL 3992392 (E.D. Cal. Aug. 1, 2013), wherein a district court in the Eastern District of California held that an inmate's claim that prison officials were deliberately indifferent to his safety by placing him in a situation that resulted in a riot was barred by *Heck* because the claim questioned the validity of the inmate's subsequent disciplinary conviction for leading and participating in a riot. Dkt. No. 37 at 5–6.

In *Farley*, the prisoner-plaintiff, a Black inmate, was injured in an altercation between Black and Hispanic inmates and, in conjunction with this altercation, was found guilty of leading and participating in a prison riot. The prisoner-plaintiff claimed that defendants were deliberately

8

indifferent to his safety, in violation of the Eighth Amendment, because they placed Hispanic inmates on the same yard as him and other Black inmates, despite knowing that Hispanic and Black inmates would fight if placed on the same yard and knowing that the prisoner-plaintiff suffered from cancer and an abdominal tumor that placed him at substantial risk of harm if involved in a violent altercation. The defendants argued that that the prisoner-plaintiff's Eighth Amendment claim was barred by *Heck* because in order for the prisoner-plaintiff to prevail on his Eighth Amendment claim, he would need to prove that the prison official had a sufficiently culpable state of mind, which is inconsistent with the prison disciplinary finding that the prisoner-plaintiff had initiated and/or participated in the riot. The district court in *Farley* found the facts analogous to those in *Cunningham v. Gates*, 312 F.3d 1148 (9th Cir. 2002):

> Here, defendants rely on *Cunningham v. Gates*, 312 F.3d 1148 (9th Cir. 2002), and the undersigned finds their argument persuasive. *Id.*, 312 F.3d at 1152–55. In *Cunningham*, two robbers exchanged gunfire with police officers surrounding their getaway car. The exchange resulted in the death of one robber and an attempted murder and felony-murder conviction for the other. *Id.* at 1152. Following his conviction, the surviving robber attempted to bring an excessive force claim against the officers. *Id.* He argued that the police fired first, and that the officers' use of excessive force created a situation that provoked him into firing his weapon, which the court identified as a "danger creation theory." *Id.* at 1154 (citation omitted). The Ninth Circuit held that both theories were barred under *Heck* because they disputed factual issues that had been resolved in the criminal action against him. The theory that the police fired first was "squarely barred" because the plaintiff's felony murder conviction required the jury to find that he had intentionally provoked the deadly police response, and did not act in self-defense. *Id.* at 1152. The danger creation theory was also barred because Cunningham could not prove that the police used excessive force when they jammed the getaway car because it would necessarily imply the police were not acting within the scope of their duties. *Cunningham*, at 1154–55.
>
> While the challenge in *Cunningham* involved a criminal conviction, and the instant case involves a prison disciplinary [conviction], both prisoners placed themselves in harm's way. Like *Cunningham*, the facts alleged in this lawsuit and the facts at issue in the disciplinary hearing arose out of the same instance of conduct. Thus, plaintiff's claims are "squarely barred" to the extent that his claims depend on the theory that he did not lead or participate in the riot. The documents provided by plaintiff demonstrate that he was found guilty of leading or participating in the July 21, 2010 riot. Therefore, plaintiff's claim that he was not the aggressor, but was the victim, of an attack on July 21, 2010 necessarily implicates the validity of the prison disciplinary [conviction]. *See Cunningham*, 312 F.3d at 1152.

*Farley*, 2013 WL 3992392, at *5–*6. In his brief opposition, Plaintiff states that he has presented sufficient evidence in his complaint. Plaintiff does not address the *Heck* argument. Dkt. No. 39.

The Court is not persuaded that the reasoning in *Farley* applies here. In contrast with the

9

plaintiffs in *Farley* and *Cunningham*, Plaintiff's disciplinary violation for assault is not predicated on Plaintiff being the aggressor. The RVR report does not discuss what motivated Plaintiff's assault on inmate Claudio, only stating that evidence was presented that immediately prior to the assault, Officer Solis saw Plaintiff and inmate Claudio sitting at the third row of tables in front of cell 135, and then Officer Solis observed Plaintiff swing at inmate Claudio with his right hand in a closed fist. Dkt. No. 37-3 at 164. This finding is not inconsistent with Plaintiff's version of events — that, prior to the assault, inmate Claudio spoke to him aggressively and then lunged at him with a closed fist. In other words, even if the Court were to find that Defendant Gomez incited inmate Claudio to attack Plaintiff, that finding would not call into question the validity of Plaintiff's disciplinary violation. Regardless of whether Plaintiff initiated the assault on inmate Claudio or was acting in self-defense, the fact remains that, at some point, Plaintiff assaulted inmate Claudio, which is consistent with the RVR and disciplinary violation. Accordingly, the Court finds that the current action is not barred by *Heck*.

**III. Eighth Amendment Claim**

Defendant Gomez argues that the following undisputed material facts show that he was not deliberately indifferent to Plaintiff's safety: (1) Plaintiff was responsible for the attack; (2) Defendant Gomez could not have known that his alleged actions — banging keys, delaying Plaintiff by five minutes, or having a brief conversation with inmate Claudio — would cause a risk of harm to Plaintiff; and (3) Defendant Gomez was not present when the incident occurred. Dkt. No. 37 at 6–8. Plaintiff argues that Defendant Gomez incited the fight between himself and inmate Claudio. Dkt. No. 21 at 3; Dkt. No. 39.

**A.  Standard**

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833. The failure of prison officials to protect inmates from attacks by other inmates violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate

10

health or safety. *Farmer*, 511 U.S. at 834.

To establish liability under the Eighth Amendment, the prison official must know of and disregard an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837. A prison official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault," but he must have more than a "mere suspicion" that an attack will occur. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

While a prisoner's failure to give prison officials advance notice of a specific threat is not dispositive with respect to whether prison officials acted with deliberate indifference to the prisoner's safety needs, deliberate indifference will not be found where there is no other evidence in the record showing that the defendants knew of facts supporting an inference and drew the inference of substantial risk to the prisoner. *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160–61 (9th Cir. 2013) (finding no deliberate indifference to prisoner's safety where the record, viewed objectively and subjectively, did not lead to an inference that prison officials responsible for making prisoner's cell assignment were aware that he faced substantial risk of harm). However, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *See Farmer*, 511 U.S. at 842. This is a question of fact. *Id.* But while obviousness of risk may be one factor in demonstrating subjective knowledge, a defendant's liability must still be based on actual awareness of the risk rather than constructive knowledge. *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015).

Neither negligence nor gross negligence constitutes deliberate indifference. *See Farmer*, 511 U.S. at 835–36 & n.4; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

**B.   Analysis**

Plaintiff has failed to satisfy the second prong of an Eighth Amendment failure to protect

claim. At summary judgment, the Court must view the facts in the light most favorable to Plaintiff. Defendant Gomez does not dispute that he had a history of harassing Plaintiff and that inmate Claudio joined in when Defendant Gomez mocked Plaintiff. At summary judgment, the Court assumes the truth of Plaintiff's statement that he observed Defendant Gomez speaking with inmate Claudio immediately prior to inmate Claudio entering the dayroom. However, Plaintiff's allegation that, in this conversation, Defendant Gomez instructed inmate Claudio to go over to Plaintiff is entirely speculative. Plaintiff does not claim to have heard the conversation, and there is no evidence in the record as to what, if anything, was said. In addition, assuming arguendo that Defendant Gomez instructed inmate Claudio to go over to Plaintiff, this instruction alone does not establish a sufficiently culpable mindset. It is undisputed that the fight did not take place immediately after Defendant Gomez's conversation with inmate Claudio. Rather, the undisputed evidence is that after inmate Claudio went over to Plaintiff, there was an antagonistic exchange of words between inmate Claudio and Plaintiff that preceded the fight. And, in Plaintiff's statement at his disciplinary hearing, Plaintiff stated that other Black inmates encouraged him to "do something" about inmate Claudio, and stated that he could not walk away from the situation because he would have had to answer to "his people." Dkt. No. 37-3 at 163. Plaintiff has not presented any evidence that Defendant Gomez was aware that instructing inmate Claudio to go over to Plaintiff would result in a physical altercation. Plaintiff describes his prior negative interactions with Defendant Gomez and inmate Claudio as consisting of verbal harassment, with Defendant Gomez also slamming and banging his keys. Plaintiff does not report any prior history of physical intimidation or physical violence between himself and inmate Claudio, or any other reason he would have feared for his safety around inmate Claudio.

In short, there is no evidence from which it can be reasonably inferred that Defendant Gomez incited inmate Claudio to engage in a physical altercation with Plaintiff, as alleged in the complaint. Factual contentions must be supported by submitted evidence. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983) (finding that nonmoving party "cannot rely on the mere possibility of a factual dispute as to intent to avert summary judgment. Nor can it expect the district court to draw inferences favorable to it when

12

they are wholly unsupported."). "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996); *see also Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir.2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."). A plaintiff's unsupported speculation about a defendant's mental state does not create a triable issue of fact. *See Carmen v. San Francisco Unified School Dist*., 237 F.3d 1026, 1028 (9th Cir. 2001) (plaintiff's belief that defendant acted with an unlawful motive, without supporting evidence, is not cognizable evidence on summary judgment.).

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to present more than a scintilla of evidence from which a jury could reasonably find that Defendant Gomez's conversation with inmate Claudio created an excessive risk to Plaintiff's safety. *See, e.g., Hernandez v. Wood*, No. 13-CV-05633-YGR, 2016 WL 1070663, at *14–*15 (N.D. Cal. Mar. 18, 2016), *aff'd sub nom. Hernandez v. Woods*, 731 F. App'x 643 (9th Cir. 2018) (no triable issue of fact as to whether officer opening cell door which led to fight that left prisoner injured was deliberately indifferent to prisoner's safety when prisoner's contention that officer "intentionally" opened cell door was unsupported speculation and not based on personal knowledge, and officer stated that he inadvertently opened door); *cf. Jones v. Ryan,* No. 07CV1019 JMA NLS, 2011 WL 227569, at *5 (S.D. Cal. Jan. 24, 2011) (no triable issue of fact as to whether officer failed to protect prisoner when prisoner's allegation that officer appeared to have prior knowledge of forthcoming attack was based on prisoner's speculation as to what the officer said or heard in control tower). The Court therefore finds that Defendant Gomez is entitled to summary judgment as a matter of law on Plaintiff's Eighth Amendment claim.

**IV.    Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a government official is entitled to qualified

13

immunity, courts must consider (1) whether the official's conduct violated a constitutional right, and (2) whether that right was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236. Because there was no violation of Plaintiff's constitutional rights, there is no need to further address qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Gomez's motion for summary judgment. The Clerk shall enter judgment in favor of Defendant Gomez and close the file.[5]

This order terminates Dkt. No. 37.

**IT IS SO ORDERED.**

Dated: 8/22/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[5] In addition to seeking damages, Plaintiff also requests that his petition for a writ of habeas corpus, *Hooker v. Spearman*, C No. 11-1652 SBA (PR) be reheard because he filed his court papers in a timely fashion. Dkt. No. 21 at 3. If Plaintiff seeks reconsideration of the denial of his prior habeas petition, he must seek reconsideration in that particular action. If Plaintiff seeks to bring a § 1983 action alleging that he was denied his First Amendment right to access the courts with respect to *Hooker v. Spearman*, C No. 11-1652 SBA (PR), he must bring such a claim in a separate action. As the Court explained in its March 5, 2018 screening order, unrelated claims against different defendants must be alleged in separate complaints. Dkt. No. 24 at 3.